2026 IL App (1st) 251006-U

No. 1-25-1006

Order filed July 8, 2026

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| AMY KESSEM, on behalf of herself, her minor children, and all others similarly situated; and ROBERT ROTH, on behalf of himself, his minor child, and all others similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 24 L 1773 |
| CHICAGO TEACHERS UNION, JESSE SHARKEY and STACY DAVIS GATES, individually and as representatives of a defendant class, and AMERICAN FEDERATION OF TEACHERS, | ) ) ) ) | Honorable Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Plaintiffs' amended complaint properly dismissed with prejudice based on lack of subject matter jurisdiction and standing. Defendant's cross-appeal is remanded.

¶ 2     Plaintiffs Amy Kessem and Robert Roth appeal from a trial court order dismissing their amended complaint with prejudice, pursuant to sections 2-619 and 2-615 of the Illinois Code of

No. 1-25-1006

Civil Procedure (Code) (735 ILCS 5/2-619, 2-615 (West 2022)). We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      In January 2022, during the COVID-19 pandemic, the Chicago Board of Education (CBE) cancelled in-person classes for public school students for one week after a majority of teachers represented by the Chicago Teachers Union (CTU), refused to return to in-class instruction in response to the pandemic. The teachers voted for temporary remote instruction.

¶ 5      CBE and CTU filed unfair labor charges against each other with the Illinois Educational Labor Relations Board (IELRB). CBE claimed that CTU engaged in an illegal strike and it sought emergency relief to enjoin the union's actions. In response, CTU argued that CBE unilaterally changed the agreement concerning the resumption of remote instruction and unlawfully locked the teachers out of their classrooms. The IELRB subsequently issued unfair labor complaints against both CBE and CTU.

¶ 6      CBE and CTU subsequently signed a "Safety Agreement" on January 10, 2022, and in-person classes resumed on January 12.

¶ 7      In July 2023, while their respective complaints were pending with the IELRB, CBE and CTU entered into a joint settlement agreement resolving their labor dispute. The IELRB dismissed the pending complaints on July 19, 2023.

¶ 8      Plaintiffs Amy Kessem and Robert Roth are parents of children who were enrolled in public schools during the time in-person classes were cancelled. On July 12, 2024, Kessem and Roth filed a first amended putative class action complaint against CTU.[2] Also named as

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

[2]In their putative class action complaint, plaintiffs sought certification for two plaintiff classes, one comprised of students and the other comprised of parents. They also sought certification of a defendant class comprised of members of the CTU who voted in favor of the strike.

2

defendants were Jesse Sharkey, then president of CTU; Stacy Davis Gates, then vice president of CTU; and the American Federation of Teachers (AFT).

¶ 9     Plaintiffs alleged that CTU engaged in an illegal strike in violation of section 13(b) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/13(b) (West 2022)) when the teachers refused to return to in-class instruction.[3] Plaintiffs argued that the illegal strike was "the but-for cause" of the cancelled classes. They further argued that AFT aided and abetted and conspired with CTU in carrying out the unlawful strike. Plaintiffs also maintained that the cancellation of in-person classes was a breach of the collective bargaining agreement (CBA) between CTU and CBE.

¶ 10     Plaintiffs' complaint contained six counts: (I) negligence; (II) public nuisance; (III) civil conspiracy; (IV) aiding and abetting tortious activity; (V) implied right of action—prohibition on strikes; and (VI) breach of contract. The complaint also included a conditional count alleging a violation of article 1, section 12, of the Illinois Constitution (Ill. Const. 1970, art. 1, § 12).[4] Plaintiffs claimed that if the Act granted defendants tort immunity and prohibited judicial or administrative remedies to plaintiffs, then the Act was unconstitutional as applied.

¶ 11     The defendants each filed separate motions to dismiss the complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). In its motion to dismiss, CTU argued, among other things, that the claims asserted were within the exclusive jurisdiction of the IELRB and therefore the claims should be dismissed for lack of subject matter jurisdiction. CTU also argued that the complaint should be dismissed because plaintiffs lacked standing to sue.

---

[3]Section 13(b) of the Act provides in relevant part that educational employees in a school district organized under Article 34 of the School Code (105 ILCS 5/34-1 *et seq.* (West 2022)) shall not engage in a strike except under certain conditions. 115 ILCS 5/13(b) (West 2022).

[4]Article 1, section 12 provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property, or reputations. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. 1, § 12.

¶ 12    In their motion to dismiss, Sharkey and Gates adopted the arguments presented by CTU in its motion to dismiss. Further, Sharkey and Gates added that the claims asserted against them should be dismissed because as agents of the union, they could not be sued individually for actions taken on behalf of the principal-union.

¶ 13    In its motion to dismiss, AFT adopted the arguments presented by CTU, Sharkey and Gates. In addition, AFT argued that the claims against it for civil conspiracy and aiding and abetting should be dismissed under sections 2-619(a)(1), (5), and (9) and section 2-615 of the Code, on the ground that plaintiffs failed to sufficiently plead any predicate torts upon which these claims could be based. AFT further maintained that the claims against it should be dismissed pursuant to the Illinois Citizen Participation Act (Participation Act) (735 ILCS 110/1 *et seq.* (West 2020)), also known as the Strategic Lawsuits Against Public Participation (anti-SLAPP statute).

¶ 14    In an opinion and order entered May 8, 2025, the trial court granted defendants' motions to dismiss on various grounds, including lack of subject matter jurisdiction, lack of standing on the part of plaintiffs, and immunity afforded to union agents. The court determined it was unnecessary to address defendants' additional arguments for dismissal. The court stated that its order resolved "all issues and disputes presented before" the court.

¶ 15    Plaintiffs filed their notice of appeal on May 28, 2025, and an amended notice of appeal on May 30, 2025. AFT filed a notice of cross-appeal based on its additional request for dismissal under the anti-SLAPP statute, which the trial court did not rule upon. We granted the Labor Law Scholars leave to file an *amicus curiae* brief in support of defendants.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, plaintiffs raise several arguments as to why the trial court erred in dismissing the claims in their complaint.

¶ 18    Defendants filed their respective motions to dismiss pursuant to section 2-619.1 of the Code, which permits a party to seek dismissal under both section 2-615 and section 2-619 of the Code. See *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 21 (citing section 2-619.1 of the Code (West 2010)). A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint based upon defects apparent on its face. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. A motion to dismiss under section 2-619 admits the legal sufficiency of the pleadings but asserts defects or defenses outside of the pleadings which defeat the claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). "In a motion to dismiss under either section, the court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Antonacci*, 2015 IL App (1st) 142372, ¶ 21. Our review is *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 19                          A. Exclusive Jurisdiction of the IELRB

¶ 20    The trial court determined that it lacked subject matter jurisdiction over plaintiffs' claims for an implied right of action prohibiting strikes and for breach of the CBA, based on its finding that the Act conferred exclusive jurisdiction on the IELRB to resolve these claims.

¶ 21    Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceedings in question belong. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Under the Illinois Constitution of 1970, circuit courts have original jurisdiction over all justiciable matters, except for administrative review actions and cases for which the Illinois Supreme Court has exclusive jurisdiction. See *J & J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23; *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 15. However, the legislature may divest circuit courts of their original jurisdiction when it enacts a comprehensive statutory administrative scheme that creates rights and

duties having no counterpart in common law or equity. *J & J Ventures Gaming*, 2016 IL 119870, ¶ 23; *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27.

¶ 22 In 1983 our legislature enacted the Act (Pub. Act 83–1014, eff. January 1, 1984) as a comprehensive statutory scheme to address issues concerning labor disputes regarding public education, conferring exclusive jurisdiction on the IELRB. See *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504,* 128 Ill. 2d 155, 161-62 (1989); *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 219-24 (1988); M. Malin, *Implementing the Illinois Educational Labor Relations Act*, 61 Chicago-Kent Law Review 101 (1985).

¶ 23 "One of the foremost purposes for adoption of the Act, and thus the creation of the [IELRB], is 'to regulate labor relations between educational employers and educational employees, including *** resolution of disputes arising under collective bargaining agreements.' " *Board of Trustees of Prairie State Community College, District 515, Cook County v. Prairie State College Federation of Teachers, Local 3816*, 184 Ill. App. 3d 363, 365 (1989) (quoting Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.* (now 115 ILCS 5/1 (West 2020))); see also *Graduate Employees Organization, IFT/AFT, AFL—CIO v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 278, 279-80 (2000).

¶ 24 To effectuate this statutory purpose, courts have discouraged litigants in school-related labor disputes from attempting to circumvent the authority of the IELRB by filing actions in the circuit court. See *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Association Unit No. 114*, 2013 IL 114853, ¶¶ 65-66 (Kilbride, C.J., specially concurring). Our supreme court has determined that "the circuit courts' only roles under the Act are to enforce [IELRB]-issued subpoenas, to enjoin or

prevent strikes by educational employees where such strikes pose a danger to the public health or safety, and to enforce [IELRB] orders during and after unfair labor practice hearings." *Warren Township*, 128 Ill. 2d at 165 (internal citations omitted).

¶ 25 Here, in count V of their complaint, plaintiffs asserted a claim for an implied right of action prohibiting strikes; in count VI, they brought a claim for breach of the collective bargaining agreement. Neither of these claims pertain to a request to enforce an IELRB-issued subpoena, to enjoin or prevent strikes by educational employees, or to enforce IELRB orders during and after unfair labor practice hearings, which are the "only roles" for the circuit court under the Act. See *id*. at 165.

¶ 26 Accordingly, we find the trial court did not err in dismissing counts V and VI of the complaint for lack of subject matter jurisdiction, pursuant to section 2-619(a)(1) of the Code.

¶ 27                                      B. Standing

¶ 28 The trial court also determined that plaintiffs lacked standing to bring their common-law claims for negligence, public nuisance, civil conspiracy, and aiding and abetting tortious activity, and dismissed these claims with prejudice. An order granting a motion to dismiss for lack of standing is reviewed *de novo*. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999).

¶ 29 "In simple form, the question of standing asks whether a certain party is entitled to have the court decide the merits of a particular issue or dispute." *In re County Treasurer*, 2013 IL App (3d) 120999, ¶ 17. " 'There is common-law standing, which requires an injury in fact to a legally recognized interest [citation], and there is statutory standing, which requires the fulfillment of statutory conditions to sue for legislatively created relief.' " *Neighbors Against a Marijuana Dispensary at 2573-81 Lincoln, Inc. v. Zoning Board of Appeals of the City of Chicago*, 2026 IL App (1st) 241910, ¶ 34 (quoting *People v. Johnson*, 2021 IL 125738, ¶ 31).

7

¶ 30    "The concept of statutory standing is founded upon the judiciary's recognition that the 'legislature, having conferred a right of action *** may determine who shall sue, and the conditions under which the suit may be brought.' " *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 348 (Freeman, C.J., dissenting) (quoting *Wilson v. Tromly*, 404 Ill. 307, 310 (1949)).

¶ 31    In determining whether a party has statutory standing to bring an action, courts look to the statute under which the party brings the lawsuit. See, *e.g., Fausett v. Walgreen Co.*, 2025 IL 131444, ¶ 40. Here, plaintiffs filed their complaint pursuant to the statutory framework established under the Act.

¶ 32    In an effort to circumvent the exclusive jurisdiction of the IELRB and establish common-law standing, plaintiffs attempt to label statutory claims as claims arising under state common-law theories of negligence, public nuisance, civil conspiracy, aiding and abetting tortious activity, prohibition on strikes, and breach of contract. Our supreme court has concluded that "[w]here labor-law preemption is an issue, creative labelling cannot carry the day. Rather, the needed reconnaissance focuses upon the conduct being regulated." *Zander v. Carlson*, 2020 IL 125691, ¶ 37. Here, the conduct being regulated is a Chicago public teachers' strike. Plaintiffs argued that CTU engaged in an illegal strike in violation of section 13(b) of the Act when the teachers refused to return to in-class instruction.

¶ 33    The negligence count alleged that the strike's illegality was *prima facie* evidence of negligence; the public nuisance count alleged that the illegal strike was a substantial and unreasonable interference with the public's right to have schools operated in accordance with the law; the civil conspiracy count alleged that the AFT, Sharkey, and Gates agreed with, encouraged, ratified, participated in, and/or supported CTU in the illegal strike; the count alleging aiding and

8

abetting tortious activity claimed that the AFT provided encouragement, moral support, and material assistance to the CTU in carrying out the illegal strike; the count for prohibition on strikes alleged that defendants had a duty not to strike unless certain conditions were met under section 13(b) of the Act; and the count for breach of contract alleged that the illegal strike was a breach of the CBA.

¶ 34    Regardless of their common-law labels, all these counts are predicated on the assertion that the CTU engaged in an illegal strike in violation of section 13(b) of the Act. This section limits the circumstances under which educational employees may strike, and provides that:

> "If *** in the opinion of an employer the strike is or has become a clear and present danger to the health or safety of the public, the employer may initiate in the circuit court of the county in which such danger exists an action for relief which may include, but is not limited to, injunction." 115 ILCS 5/13(b) (West 2020).

As the Oregon appellate court held in the matter of *Johnson v. Portland Association of Teachers,*

> "by the terms of the statute, the ability to challenge the lawfulness of a strike is vested solely in the public employer, and the statute does not otherwise create a mechanism by which third parties or members of the public at large may challenge a strike of public employees." 346 Or. App. 561, 567 (2026).

¶ 35    Consequently, plaintiffs clearly did not have statutory standing to bring claims challenging the Act. Therefore, we find the trial court did not err in dismissing the claims for negligence, public nuisance, civil conspiracy, aiding and abetting tortious activity, prohibition on strikes, and for breach of contract in counts I through VI of the complaint for lack of standing under section 2-619(a)(9) of the Code.

¶ 36    Before leaving this section of our analysis, we address two additional arguments raised by

plaintiffs. Plaintiffs argue that the trial court erred in relying on *Zander*, 2020 IL 125691, to dismiss their claims against Sharkey and Gates for civil conspiracy. In *Zander*, the Illinois Supreme Court concluded that a union attorney was immune from individual liability for actions or inactions taken in connection with assisting a union member on behalf of the union. *Id*. ¶ 32.

¶ 37    Here, the trial court, relying on this holding in *Zander*, concluded that as agents of the CTU, Sharkey and Gates could not be sued individually for actions they undertook on behalf of the union. Plaintiffs contend that they did not sue Sharkey and Gates in their capacity as union officers, but rather as defendant class-representatives, and therefore *Zander* does not apply. A review of plaintiffs' pleadings does not support this contention.

¶ 38    In count III of plaintiffs' complaint, which asserted a claim for civil conspiracy, plaintiffs alleged that "AFT, Sharkey, Gates, and Defendant Class tortiously conspired with CTU in its unlawful and tortious acts." This pleading demonstrates that in addition to being sued in their capacities as class representatives, Sharkey and Gates were also sued in their individual capacities as union officers. Therefore, the trial court did not err in relying on the holding in *Zander* to dismiss the claims against Sharkey and Gates for civil conspiracy.

¶ 39    Plaintiffs next argue that the trial court erred in dismissing the claims they brought against AFT for civil conspiracy and aiding and abetting. The court dismissed these claims on the basis that they were not independent torts, but required underlying tortious conduct, which plaintiffs failed to adequately plead. We find the court did not err in this regard.

¶ 40    "[C]laims for civil conspiracy and aiding and abetting are not independent torts, *i.e.*, they both require underlying conduct that is tortious." *Chadha v. North Park Elementary School Ass'n*, 2018 IL App (1st) 171958, ¶ 58. Civil conspiracy is not an independent tort, therefore if a plaintiff fails to state an independent cause of action underlying the conspiracy allegation, the claim for

conspiracy fails. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49. Here, plaintiffs failed to plead any underlying tortious conduct on the part of members of the CTU that would support claims for civil conspiracy or aiding and abetting.

¶ 41                                    C. Constitutional Challenge

¶ 42    The lack of statutory standing is fatal to plaintiffs' as-applied constitutional challenge to the Act. Plaintiffs argue that if the Act precludes them from bringing their claims in the circuit court, then they are left without a remedy in violation of Article 1, Section 12 of the Illinois Constitution. We disagree.

¶ 43    Article 1, section 12 provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. 1, § 12. Our supreme court has determined that "this constitutional provision merely expresses a philosophy, and does not mandate a certain remedy be provided in any specific form. [Citation]. Consequently, it is not violative of this aspirational goal to limit or restrict available remedies." *Schoeberlein v. Purdue University*, 129 Ill. 2d 372, 380 (1989).

¶ 44    The Act does not abolish remedies to redress alleged unfair labor practices. Rather, the statute reflects the legislature's intent to designate the IELRB as the exclusive forum of original jurisdiction for adjudicating labor disputes involving unfair labor practices.

¶ 45    Moreover, this section of the Illinois Constitution is not implicated here because even prior to the enactment of the Act, parents did not have standing to seek a remedy for an alleged unfair labor practice by an educational employer. In *Allen v. Maurer*, 6 Ill. App. 3d 633, 639-40 (1972), the appellate court concluded that taxpayer-parents did not have standing to bring an action in the circuit court to enjoin a teachers' strike and compel the State to discharge its constitutionally

11

mandated duty to maintain an efficient public school system. The reviewing court held that the authority to seek such an injunction and to "implement the command of the constitution," rested with the Board of Education, and that conferring standing on parents would have "the effect of usurping the Board of Education's control of the local educational system." *Id*. at 640.

¶ 46    The fact that *Maurer* is an equity case, and the instant case is a law case seeking money damages, does not change our analysis. An equitable action is "[a]n action that seeks equitable relief, such as an injunction or specific performance, as opposed to damages." Black's Law Dictionary 38 (11th ed. 2019). The Illinois Constitution of 1970 abolished the distinction between law and equity. *Bennett v. Gordon*, 282 Ill. App. 3d 378, 385 (1996). "Hence, this distinction carries little force today." *Federal National Mortgage Association v. Altamirano*, 2020 IL App (2d) 190198, ¶ 22.

¶ 47                              D. AFT Cross-Appeal

¶ 48    In its cross-appeal, AFT argues that the trial court erred by failing to rule on its motion to dismiss brought under the anti-SLAPP statute. "A SLAPP is a meritless lawsuit that is used to retaliate against a defendant for attempting to participate in government by exercising some first amendment right such as the right to free speech or the right to petition." *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 12. "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protected activity and discourage opposition by others through delay, expense, and distraction." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 34. "SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630 (2010). In an effort to deter SLAPP suits, a moving party who prevails under the Participation Act, is awarded attorney fees and costs. 735 ILCS 110/25 (West 2022).

¶ 49    In its motion to dismiss, AFT argued that plaintiffs' complaint was nothing more than a SLAPP designed to retaliate against AFT for exercising its right to free speech, advocating for COVID safety measures in schools and hardship loans for members negatively impacted by the labor dispute. AFT now argues on appeal that the trial court did not have the discretion not to rule on the motion and therefore its failure to do so was error.

¶ 50    AFT's arguments require this court to engage in statutory interpretation of the Act. "Issues of statutory interpretation are questions of law which we review *de novo*." *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). "A court's primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent." *Young v. Wieland*, 2020 IL App (2d) 191042, ¶ 26. "The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning." *Oswald v. Hamer*, 2018 IL 122203, ¶ 10.

¶ 51    Section 15 of the Participation Act describes the type of motion to which the statute applies. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 37. This section provides, in relevant part:

"[The Participation Act] applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government, including freedom of the press. The claim does not need to solely pertain to the moving party's constitutional rights as [the Participation Act] applies regardless of the motives of the person who brought the claim that the moving party is seeking to dispose of." 735 ILCS 110/15 (West 2022).

¶ 52    "A 'claim' under the [Participation Act] includes 'any lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing alleging injury.' " *Sandholm*, 2012 IL 111443, ¶ 38 (quoting section 10 of the Act (735 ILCS 110/10 (West 2008))). Here, plaintiffs'

lawsuit arguably constitutes a "claim" as defined by sections 15 and 10 of the Participation Act.

¶ 53    Section 20 of the Participation Act provides, in relevant part:

"On the filing of any motion as described in Section 15, a hearing and decision on the motion must occur within 90 days after notice of the motion is given to the respondent. *** The court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by [the Participation Act]." 735 ILCS 110/20(a), (c) (West 2022).

¶ 54    Based on our interpretation of these statutory provisions, we conclude that when AFT filed its anti-SLAPP motion, the trial court was required to hold a hearing on the motion and render a decision thereon "within 90 days after notice of the motion is given to the respondent." The trial court failed to do so. Therefore, we remand the anti-SLAPP motion to the trial court for a hearing and decision.

¶ 55                                III. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the trial court of Cook County and remand AFT's cross-appeal for further proceedings consistent with this order.

¶ 57    Affirmed; remanded with directions.